**Jacalyn SIDELL**

v.

**Moss SIDELL.**

**No. 2009–159–Appeal.**

Supreme Court of Rhode Island.

April 19, 2011.

500

James A. Bigos, Esq., Pawtucket, for Plaintiff.

Moss M. Sidell, Pro Se, for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, ROBINSON,
and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case is before the Court on an appeal by Moss Sidell (Moss or defendant) from a Family Court order in favor of Jacalyn Sidell (Jacalyn or plaintiff), his former wife. The parties were divorced in the Rhode Island Family Court in June 2007. When the decree was entered, the plaintiff and the parties' minor child [1] lived in Connecticut; sometime thereafter the defendant relocated to Massachusetts. In 2009, the defendant filed four post-judgment motions about custody and child-support enforcement issues in the Family Court. Upon motion by the plaintiff, these motions were dismissed based on lack of subject-matter jurisdiction. We affirm in part and vacate in part.

### Facts and Travel

As part of a marital settlement agreement (MSA), which was incorporated but not merged in the divorce decree, the parties stipulated that "[t]he State of Rhode Island shall retain exclusive jurisdiction of all matters under this Settlement Agreement, and enforcement or modification thereof, and the laws of the State of Rhode Island will be applied to all aspects thereof." Their agreement also provided that "[n]either party shall bring any legal action involving the children, outside of the State or Rhode Island." [2] We are in-

---

1. The child was born on November 27, 1993. We note that the parties have another child together, who is now past the age of majority and therefore is not subject to these custody or child-support issues.

2. This was included in contemplation of the fact that Jacalyn and the minor child were

formed that Jacalyn and the minor child have lived in Connecticut since approximately April 2007 and that Moss lived in Rhode Island from the time the divorce was granted in June 2007 until July 2008. The record discloses that while Moss remained in Rhode Island, the Family Court heard and decided postjudgment motions filed by Jacalyn.

In January 2009, Moss filed two motions in Family Court, the first captioned a "Motion for Instructions and For Miscellaneous Relief" and the second a "Motion to Adjudge Plaintiff in Contempt, For Instructions and For Miscellaneous Relief." The Family Court found that Moss had not effectuated service on Jacalyn, and therefore the motions were passed. Notably, the hearing justice cautioned Moss that, "[y]ou live in Massachusetts and mother lives in Connecticut. I thought everybody agreed after we finished this the last time that Rhode Island really was out of it." She went on to inform Moss that "if [Jacalyn], in fact, did register the orders in Connecticut, that sounds [like] the place you need to go to file your motions." A party may register the orders in another state based on that state's statute paralleling G.L.1956 § 15–14.1–27 ("Registration of child custody determination") and G.L. 1956 § 15–23.1–602 ("Procedure to register [support] order for enforcement").

The defendant disagreed with these admonitions and filed substantially similar motions in Family Court in February 2009, prompting Jacalyn to appear specially and move to dismiss on the grounds that the Rhode Island Family Court no longer retained personal and subject-matter jurisdiction over the parties and this controversy.[3]

In defending his decision to seek relief in Rhode Island, Moss argued that, because Jacalyn previously had filed postjudgment motions in Rhode Island, while living in Connecticut, she had "voluntarily submitted herself to the jurisdiction of Rhode Island[.]" The hearing justice rejected this argument and noted that "this [c]ourt has tried to tell you as many times as possible, you don't live here. The plaintiff doesn't live here. * * * Rhode Island is no longer the appropriate place to have this continuing litigation." Specifically addressing the fact that the court previously decided Jacalyn's motion, the trial justice stated:

> "[T]he [c]ourt did hear [the motion] because, in fact, there was no other court that had assumed jurisdiction of the matter. [Jacalyn] soon thereafter did register the Rhode Island orders, the custody orders, and the child support orders in Connecticut. * * * Rhode Island was the only place, and the [c]ourt made it clear that that was the end of the road, and that somebody needed to go register the order. [Jacalyn] apparently did that."

planning to move to Connecticut after the divorce.

**3.** Moss appears to have filed several requests for relief, including support-related issues, contending that Jacalyn should reimburse him for health insurance expenses; that she be held in contempt for failing to reimburse him; an order that he receive invoices for the minor child's extracurricular activities directly from the provider organization; as well as custody and visitation enforcement issues, including a request that Jacalyn be ordered to consult Moss about issues concerning the health, education and the welfare of the minor child; and that the Family Court ratify the MSA such that Rhode Island would remain the home state for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act, G.L.1956 chapter 14.1 of title 15 (UCCJEA), the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (PKPA), and for all other aspects of the MSA.

In March 2009, the Family Court entered an order dismissing Moss's motions, declaring that "the Rhode Island Family Court lacks jurisdiction over this matter[.]" The defendant appealed.

Before this Court, Moss assigns two grounds for his contentions that the trial justice erred: first, that Rhode Island has continuing jurisdiction over this controversy because Jacalyn voluntarily submitted herself to the Court's jurisdiction; and, second, because the parties agreed in their MSA that Rhode Island would remain the forum state. The defendant also alleges that the hearing justice committed reversible error by declaring that Jacalyn properly had registered the divorce documents in Connecticut.

## Standard of Review

■■■ This Court consistently has declared that "a claim of lack of subject matter jurisdiction may be raised at any time." *Long v. Dell, Inc.*, 984 A.2d 1074, 1078 (R.I.2009) (quoting *Pollard v. Acer Group*, 870 A.2d 429, 433 (R.I.2005)). Because subject-matter jurisdiction is an indispensable ingredient of any judicial proceeding, it can be raised by the court *sua sponte. Paolino v. Paolino*, 420 A.2d 830, 833 (R.I.1980). We review "*de novo* whether a court has subject-matter jurisdiction over a particular controversy." *Long*, 984 A.2d at 1078 (citing *Newman v. Valleywood Associates, Inc.*, 874 A.2d 1286, 1288 (R.I.2005)).

■■■ We also review issues of statutory interpretation *de novo. Waterman v. Caprio*, 983 A.2d 841, 844 (R.I.2009). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally

and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Iselin v. Retirement Board of the Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I.2008)). We are mindful that "our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001) (citing *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1050 (R.I.1994)).

## Analysis

### I

### The Family Court's Subject–Matter Jurisdiction

■■■ The Family Court is a legislatively created court of limited jurisdiction, and its powers are thus restricted to those that are conferred upon it by the General Assembly. *State v. Greenberg*, 951 A.2d 481, 490 (R.I.2008); *Chambers v. Ormiston*, 935 A.2d 956, 958 (R.I.2007). Specifically, the Family Court's subject-matter jurisdiction must expressly be contained in the Family Court Act, G.L.1956 § 8–10–3.[4] *Paolino*, 420 A.2d at 833. The Family Court's jurisdiction may not be extended by implication, nor may the question of subject-matter jurisdiction be waived by the parties. *Pine v. Clark*, 636 A.2d 1319, 1321 (R.I.1994); *Britt v. Britt*, 119 R.I. 791, 794–95, 383 A.2d 592, 594 (1978). The Family Court's subject-matter jurisdiction over child custody and support decisions is governed by the Uniform Child Custody Jurisdiction Enforcement Act, G.L.1956 chapter 14.1 of title 15 (UCCJEA), and the Uniform Interstate Family Support Act, G.L.1956 chapter 23.1 of title 15 (UIFSA),

4. The relevant portion of G.L.1956 § 8–10–3(a) provides that the Rhode Island Family Court has the power "to hear and determine all petitions for divorce from the bond of marriage[,] * * * all motions for allowance, alimony, support and custody of children * * *."

respectively. Each act bestows jurisdiction upon the tribunals of this state through a concept called exclusive, continuing jurisdiction, which we shall detail in our analysis of each act. Before doing so, however, we note with approval, a comment from the Model UIFSA that sums up the intersection and divergence of these uniform acts with respect to the jurisdiction of the Family Court:

> "[The] UIFSA and UCCJEA seek a world in which there is but one order at a time for child support and custody and visitation. Both [acts] have similar restrictions on the ability of a tribunal to modify the existing order. The major difference between the two acts is that the basic jurisdictional nexus of each is founded on different considerations. UIFSA has its focus on the personal jurisdiction necessary to bind the obligor to payment of a child-support order. UCCJEA places its focus on the factual circumstances of the child, primarily the 'home [s]tate' of the child * * *." Model UIFSA Comment to Art. 6, § 611 (2008).

With this in mind, we turn to each act to determine whether the Family Court erred when it dismissed Moss's motions.

## II

### Child Custody and the UCCJEA

The Uniform Child Custody Jurisdiction and Enforcement Act is embodied in chapter 14.1 of title 15. We previously have noted that the General Assembly adopted the UCCJEA "[i]n response to continuing confusion concerning the applicability of the full-faith-and credit clause of the United States Constitution to interstate custody decrees and in an attempt 'to stem the proliferation of jurisdiction in custody litigation' * * *." *Nadeau v. Nadeau,* 716 A.2d 717, 721 (R.I.1998) (quoting *Paolino,* 420 A.2d at 835). We further noted that the purpose of the UCCJEA was to "minimize jurisdictional competition and conflict so that custody decisions are rendered in the state best able to protect the welfare of the [interstate] child." *Id.* (quoting *Paolino,* 420 A.2d at 835). To effect this purpose, the UCCJEA prescribed uniform standards to be applied to determine whether a state has jurisdiction—initial or exclusive and continuing—over custody matters. *Nadeau,* 716 A.2d at 721 (citing *Thompson v. Thompson,* 484 U.S. 174, 181, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988)).

### A

### Exclusive, Continuing Jurisdiction or Initial Jurisdiction

■ Section 15–14.1–14(a)(2) provides that Rhode Island courts have exclusive, continuing jurisdiction over child-custody determinations until "[a] court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state." It is undisputed that neither Moss, Jacalyn, nor the minor child currently resides in Rhode Island, as was noted by the trial justice when she dismissed the action. In applying the plain and ordinary meaning of this language, as we are required to do, it is clear that the Family Court no longer has exclusive, continuing jurisdiction to make child-custody determinations concerning the minor child. *See Waterman,* 983 A.2d at 844 ("It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.") (quoting *Iselin,* 943 A.2d at 1049).

We recognize that in certain, limited circumstances, § 15–14.1–14(b) permits a court to exercise continuing jurisdiction to modify a child-custody determination if it

has or retains discretionary jurisdiction in the case. We note that Moss does not appear to have asked the Family Court to modify the custody order. Nonetheless, out of an abundance of caution we briefly discuss this issue. Specifically, § 15–14.1–14(b) provides that when "[a] court of this state * * * has made a child custody determination and does not have exclusive, continuing jurisdiction under this section [it] *may* modify that determination *only if* it has jurisdiction to make an initial determination pursuant to this chapter." (Emphases added.) A court has jurisdiction to make an initial determination only if, under § 15–14.1–13(a):

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum and:

"(i) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"(ii) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

"(3) All courts having jurisdiction under subdivision (1) or (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child; or

"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3) of this subsection."

We note that "the date of the commencement of the proceedings" has been interpreted by some courts to be the date of the original divorce proceeding rather than that of the current proceeding; however, we agree with those states that have held that the recent proceeding—in this case Moss's filing of post-divorce motions—is the relevant proceeding to determine both the home state of the child and "the date of the commencement of the proceedings." *See Baumgartner v. Baumgartner,* 788 P.2d 38, 40 (Alaska 1990); *Barden v. Blau,* 712 P.2d 481, 485 (Colo. 1986); *Kioukis v. Kioukis,* 185 Conn. 249, 440 A.2d 894, 898 (1981); *Rypma v. Stehr,* 68 Md.App. 242, 511 A.2d 527, 530 (1986); *Pozzi v. Pozzi,* 210 N.J.Super. 522, 510 A.2d 123, 124 (Ch.Div.1986); *Trask v. Trask,* 104 N.M. 780, 727 P.2d 88, 90 (App. 1986). "To hold that 'the proceeding' refers to the original dissolution action would confer perpetual jurisdiction over matters of custody to the courts of the state which granted the dissolution, regardless of whether the parties or child had any further connection with that state[;]" *Kioukis,* 440 A.2d at 898 (citing *Pierce v. Pierce,* 287 N.W.2d 879 (Iowa 1980)), a result that is contrary to the underlying purpose of the UCCJEA. *Nadeau,* 716 A.2d at 721 (citing *Paolino,* 420 A.2d at 835). Because our goal is to give effect to the purpose of the act as intended by the General Assembly, (*Webster,* 774 A.2d at 75; *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d at 1050), we must interpret "commencement of the proceeding" to mean the recent, post-divorce proceeding concerning the custody of the child.

Because Connecticut has been the child's home state since 2007, that state has jurisdiction under § 15–14.1–13(a)(2) and Conn. Gen.Stat. Ann. § 46b–115k(a)(1) (West 2009).[5] Rhode Island therefore lacks both exclusive, continuing jurisdiction and discretionary jurisdiction under §§ 15–14.1–13, 15–14.1–14. Based on the foregoing, Rhode Island no longer retains jurisdiction to make custody or visitation determinations in this case. Connecticut was the child's home state when Moss filed these motions and had been the home state since 2007. Section 15–14.1–13(a)(1).

### B

### Jurisdiction via Marital Settlement Agreement

▌ Despite the dearth of subject-matter jurisdiction in this case, defendant argues that because he and plaintiff agreed in their MSA that Rhode Island would remain the home state for purposes of the UCCJEA, the parties' agreement trumps the interstate jurisdictional acts. His argument centers around three main points: (1) plaintiff submitted herself to the courts of Rhode Island and therefore waived any right to challenge jurisdiction; (2) she freely entered into a forum selection clause that is enforceable; and (3) when a party has chosen a forum, she cannot then argue that the forum is inconvenient. Unfortunately, Moss merges these contentions into a single and somewhat confusing argument, in which he attempts to persuade this Court to disregard settled law and declare that the Family Court nonetheless may decide a case based on the parties' contract, notwithstanding that it lacks subject-matter jurisdiction.

▌ It is axiomatic that "[t]he concepts of subject-matter and personal jurisdiction * * * serve different purposes * * *." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Subject-matter jurisdiction is "the authority of the * * * Court to act in a given situation[,]" *Paolino*, 420 A.2d at 833, and "no action of the parties can confer subject-matter jurisdiction upon a * * * court." *Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 702, 102 S.Ct. 2099. Personal jurisdiction, on the other hand, is "[a] court's power to bring a person into its adjudicative process[,]" Black's Law Dictionary 930 (9th ed. 2004), and because the notion of personal jurisdiction "represents a restriction on judicial power * * * as a matter of individual liberty[,]" "it can, like other such rights, be waived." *Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 702, 703, 102 S.Ct. 2099. A party may waive his or her right to a personal-jurisdiction challenge "by entering into a contract that contains a forum selection clause." *American Biophysics Corp. v. Dubois Marine Specialties*, 411 F.Supp.2d 61, 62 (D.R.I. 2006) (citing *Microfibres Inc. v. McDevitt–Askew*, 20 F.Supp.2d 316 (D.R.I.1998)); (*see also National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)) ("parties to a contract may agree in advance to submit to the jurisdiction of a given court"). An enforceable forum-selection clause does more than waive a potential challenge to personal jurisdiction—it settles the proper venue for the case and prevents "a party that has agreed to be bound * * *[from] * * * assert[ing] *forum non conveniens* as a ground for dismissing a suit brought in the chosen forum." (Emphasis added.) *American Biophysics Corp.*, 411

---

**5.** Connecticut General Statutes Annotated § 46b–115k (West 2009) is virtually identical to § 15–14.1–13.

F.Supp.2d at 62. However, when the chosen forum has no authority to hear the case, "[a] court never can apply *forum non conveniens* once it determines that jurisdiction is lacking." *Kedy v. A.W. Chesterton Co.*, 946 A.2d 1171, 1183 (R.I.2008) (citing *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 433, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007)). In *Tateosian v. Celebrity Cruise Services, Ltd.*, 768 A.2d 1248 (R.I.2001), we noted that, to be enforceable, forum-selection clauses must be fundamentally fair. *Id.* at 1250 (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595–97, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)). In *Tateosian*, 768 A.2d at 1250, this Court concluded that the federal court was the proper court to hear the matter because the contract at issue was a maritime contract governed by federal maritime law. In other words, before turning to the issue of fairness as it relates to forum selection, we addressed the overarching question of subject-matter jurisdiction. This procedure coincides with the general rule that, when a court has "determine[d] that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground." *Kedy*, 946 A.2d at 1183 (quoting *Sinochem International Co. Ltd.*, 549 U.S. at 436, 127 S.Ct. 1184).

Accordingly, we are satisfied that defendant's argument that the MSA is controlling despite the court's lack of subject-matter jurisdiction is meritless because litigants may not vest the Family Court with jurisdiction by agreement or otherwise.

In the absence of subject-matter jurisdiction, a court is without power to hear a case. It matters not if the court has personal jurisdiction over the defendant or even that the defendant specifically and voluntarily elected the tribunal. It is a well-established principle that "no action of the parties can confer subject-matter jurisdiction upon a * * * court" where the court has no authority to act. *Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 702, 102 S.Ct. 2099.

During oral arguments, defendant attempted to persuade this Court to abandon years of jurisprudence by pointing to the language of the UCCJEA itself, which provides that a court "shall consider * * * [a]ny agreement of the parties as to which state should assume jurisdiction[.]" Section 15–14.1–19(b)(5). However, the record discloses that, at the time this agreement was incorporated into the divorce decree, Moss lived in Rhode Island. Because he and Jacalyn agreed that Rhode Island would be the exclusive forum, he argues that this Court must take that agreement into consideration. We do not read the statute in a vacuum. Section 15–14.1–19(a) instructs that "[a] court of this state *which has jurisdiction* * * * may decline to exercise its jurisdiction" under the doctrine of *forum non conveniens.* Section 15–14.1–19 (emphasis added). The statute also provides that, before declining to exercise its jurisdiction, the Court "shall consider * * * any agreement of the parties[.]" Section 15–14.1–19(b)(5). We affirm the trial court's dismissal of Moss's motions relating to custody for lack of subject-matter jurisdiction.[6]

---

**6.** We also note that Moss has argued that because *he* has ties to Rhode Island—namely that he is a member of the bar of this state—he has sufficient minimum contacts such that Rhode Island has jurisdiction. We need not explore the venerable principles of minimum

contacts as established by *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. Were minimum contacts to be of import to this case, the issue would be whether Rhode Island has sufficient minimum contacts with

## II

### The Uniform Interstate Family Support Act

The UIFSA was adopted by the General Assembly in 1997. This Court has yet to address its provisions. We begin by looking to the history and purpose of the act and seek guidance from the holdings of our sister jurisdictions. In the late 1980s and early 1990s, Congress sought to address the problem of an inefficient nationwide system of family law jurisprudence that allowed for multiple and often inconsistent child-support orders. *Spencer v. Spencer,* 10 N.Y.3d 60, 853 N.Y.S.2d 274, 882 N.E.2d 886, 888 (2008). In 1994, Congress enacted the Full Faith and Credit for Child Support Orders Act (FFCCSOA); and in 1996, as a condition to the award of certain federal funding, Congress required that all states enact the most recent version, the UIFSA, promulgated by the National Conference of Commissioners on Uniform State Laws (NCCUSL). 28 U.S.C. § 1738B; 42 U.S.C. § 666(f); *In re Marriage of Gulla and Kanaval,* 234 Ill.2d 414, 334 Ill.Dec. 566, 917 N.E.2d 392, 399 (2009); *Spencer,* 853 N.Y.S.2d 274, 882 N.E.2d at 889. Together these acts created a "single-order system" whose purpose was "(1) to facilitate the enforcement of child support orders among the [s]tates; * * * (2) discourage continuing interstate controversies over child support * * * [and] (3) avoid jurisdictional competition and conflict among [s]tate courts * * *." 28 U.S.C. § 1738B (Congressional Findings and Declaration of Purpose, Public Law 103–383, § 2(c)); *see also Spencer,* 853 N.Y.S.2d 274, 882 N.E.2d at 889.

"The scheme of the UIFSA is for a court with personal jurisdiction over the obligor to establish a support order and to retain jurisdiction to enforce or modify the order until the occurrence of certain conditions which terminate jurisdiction in the issuing state and provide the basis for jurisdiction in another state." *Jurado v. Brashear,* 782 So.2d 575, 579 (La.2001). These goals are implemented through the "definitional concept called 'continuing, exclusive jurisdiction[.]' " *Gibson v. Gibson,* 211 S.W.3d 601, 606 (Ky.App.2006). "Although the UIFSA never speaks explicitly of 'subject matter jurisdiction,' the terms that it does use—'jurisdiction' and 'continuing exclusive jurisdiction'—are simply alternative ways of referring to subject matter jurisdiction and its territorial limitations." *Upson v. Wallace,* 3 A.3d 1148, 1156 (D.C.2010). In Rhode Island, the concept of "continuing, exclusive jurisdiction," as it refers to support orders, is embodied in chapter 23.1 of title 15.[7]

We begin by noting that, because the child-support order defendant seeks to enforce in this case was issued in this state, Rhode Island is the issuing state for purposes of the UIFSA. Significantly, the UIFSA is limited to support orders and determinations of parentage and does not grant jurisdiction over child custody or visitation issues. Section 15–23.1–201(a) sets forth various bases for the exercise of

---

Jacalyn, against whom the contempt citation is sought, such that "the maintenance of the suit [would] not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

7. Specifically, G.L.1956 § 15–23.1–201 ("Bases for jurisdiction of nonresident"), § 15–23.1–202 ("Duration of personal jurisdiction"), § 15–23.1–205 ("Continuing, exclusive jurisdiction to modify child support order") and § 15–23.1–206 ("Continuing jurisdiction to enforce child support order") all relate to "continuing, exclusive jurisdiction" and the court's prerogatives when it exists and when it extinguishes.

personal jurisdiction over a nonresident to establish or enforce a child-support order.

Once a court has personal jurisdiction over a party, such jurisdiction continues as long as it has continuing, exclusive jurisdiction to modify its order (§ 15–23.1–205) or continuing jurisdiction to enforce it (§ 15–23.1–206). Section 15–23.1–202 provides as follows:

> "Personal jurisdiction acquired by a tribunal of this state in a proceeding under this chapter or other law of this state relating to a support order continues as long as a tribunal of this state has continuing, exclusive jurisdiction to modify its order or continuing jurisdiction to enforce its order as provided by §§ 15–23.1–205, 15–23.1–206, and 15–23.1–211."

### A

### Continuing Exclusive Jurisdiction to Modify a Child–Support Order

We need not determine the validity of either party's argument respecting continuing exclusive jurisdiction to *modify* a child-support order because even under the most generous reading of Moss's motions, he has not sought to modify the existing support order.[8]

### B

### Continuing Jurisdiction to Enforce Support Order

 Although Moss is seeking relief concerning custody and visitation of the child, to some extent he also has asked to have the monetary aspects of the order enforced; and he has asked the Family Court to hold Jacalyn in contempt allegedly for failing to adhere to its provisions. Although defendant's motions seek "in-

structions," he has asked the Family Court to order Jacalyn to reimburse him for health insurance costs and soccer expenses and to sanction her for her alleged failure to comply with the order. Whether Rhode Island has the authority to enforce any aspect of the support order is governed by § 15–23.1–206, entitled, "Continuing jurisdiction to enforce child support order[,]" which provides:

> "(a) A tribunal of this state that has issued a child-support order consistent with the law of this state may serve as an initiating tribunal to request a tribunal of another state to enforce:
>
> "(1) The order, if the order is the controlling order, and has not been modified by a tribunal of another state that assumed jurisdiction pursuant to the Uniform Interstate Family Support Act; or
>
> "(2) A money judgment for arrears of support and interest on the order accrued before a determination that an order of another state is the controlling order.
>
> "(b) A tribunal of this state having continuing jurisdiction over a support order may act as a responding tribunal to enforce the order."

To determine the question of continuing jurisdiction to enforce the support order, we return to § 15–23.1–202, which governs the duration of personal jurisdiction over child-support matters. Section 15–23.1–202 states:

> "Personal jurisdiction acquired by a tribunal of this state in a proceeding under this chapter or other law of this state relating to a support order continues as long as a tribunal of this state has *continuing, exclusive jurisdiction to*

---

8. We also note that although the parties' MSA specifically cites the PKPA and the UCCJEA, it did not cite the UIFSA; it is therefore far from clear that the parties ever consented that Rhode Island would retain personal jurisdiction over them for purposes of the UIFSA.

*modify its order or continuing jurisdiction to enforce its order \* \* \*."* (Emphasis added.)

We emphasize that, to modify an order, the state is required to have continuing, *exclusive* jurisdiction, as contrasted with enforcing an order, which merely requires *continuing* jurisdiction. This distinction is explained in an NCCUSL Model UIFSA Comment to Art. 2, § 206:

"A keystone of UIFSA is that the power to enforce the order of the issuing tribunal is not 'exclusive' with that tribunal. Rather, on request one or more responding tribunals may also exercise authority to enforce the order of the issuing tribunal. Secondly, under the one-order-at-a-time system, the validity and enforceability of the controlling order continues unabated until it is fully complied with, unless it is replaced by a modified order issued in accordance with the standards established by [UIFSA]. *That is, even if the individual parties and the child no longer reside in the issuing state, the controlling order remains in effect and may be enforced by the issuing tribunal or any responding tribunal* without regard to the fact that the potential for its modification and replacement exists." (Emphasis added.)

▮ Virtually all of the states that have ruled on this issue have held that when the individual parties and child(ren) no longer reside in the issuing state—in this case Rhode Island—that state nonetheless retains the authority to enforce its order. *See Lattimore v. Lattimore,* 991 So.2d 239, 244–45 (Ala.Civ.App.2008); *Linn v. Delaware Child Support Enforcement,* 736 A.2d 954, 964 (Del.1999); *Douglas v. Brittlebank–Douglas,* 98 Hawai'i 168, 45 P.3d 368, 374 (App.2002); *Zaabel v. Konetski,* 209 Ill.2d 127, 282 Ill.Dec. 748, 807 N.E.2d 372, 376 (2004); *In re Marriage of Metz,* 31 Kan.App.2d 623, 69 P.3d 1128, 1133 (2003); *Jurado,* 782 So.2d at 581; *Lunceford v. Lunceford,* 204 S.W.3d 699, 707 (Mo.Ct.App.2006); *Youssefi v. Youssefi,* 328 N.J.Super. 12, 744 A.2d 662, 669 (App.Div.2000); *Commonwealth ex rel. Kenitzer v. Richter,* 23 Va.App. 186, 475 S.E.2d 817, 820 (App.1996). We agree with these jurisdictions that have drawn such a distinction; however, because the authority to enforce a child-support order is *permissive,* Rhode Island is not *required* to enforce its child-support order when the remainder of the issues in the case includes custody and visitation; the order is registered in Connecticut; the minor child turns eighteen this year; and when the father really is seeking enforcement of specific aspects of the order. Because this is permissive jurisdiction, to the extent Moss has sought enforcement of the support provisions in the MSA, we vacate the judgment and remand this case to the Family Court, where the trial justice shall determine, in her discretion, whether the court will accept its permissive jurisdiction.

## III

### Registration of Divorce in Connecticut

▮ Lastly, Moss argues that Jacalyn improperly registered this case in Connecticut, allegedly failing to give him proper notice and "the opportunity to avail himself of his due-process rights under the law[.]" We note that Rhode Island is not the appropriate forum to challenge whether Moss's due-process rights were violated in Connecticut. Section 46b–115w of the Connecticut General Statutes, the parallel section to § 15–14.1–27, entitled "Registration of child custody determination[,]" and § 46b–213 *l,* the parallel section to § 15–23.1–606, entitled "Procedure to contest validity or enforcement of registered order[,]" each clearly state how a nonregistering party seeking to contest the validity

or enforcement of a registered order in Connecticut should proceed.

**Conclusion**

For the reasons set forth in this opinion, we affirm in part and vacate in part the order of the Family Court. To the extent that the defendant has sought enforcement of the child-support order in the Rhode Island Family Court, we vacate the order and remand this case to the Family Court to determine in the court's discretion whether it will accept its permissive jurisdiction. All other aspects of the order are affirmed. The papers shall be remanded to the Family Court.