OPINION
Justice GOLDBERG,
for the Court.
The defendant, Philip A. McAndrew (McAndrew or defendant) is before the Supreme Court on appeal from an order of a justice ,of .the Family Court, declining to exercise jurisdiction.over an ongoing custody dispute, between the defendant, and his former wife, Valerie M. Hogan[1] .(Hogan or plaintiff), on the ground of forum non conveniens. For. the reasons set forth within, we vacate’the judgment of . the Family Court.
Facts and Travel
The parties, both dual citizens of the United States and the Republic of Ireland (Ireland), married in 1996. Their son, P.,[2] was born in 1999, C. arrived in 2000, and E., the youngest, was born in 2004. McAndrew and Hogan chose to part ways in 2006, and a divorce was granted in Rhode Island Family Court in 2008. In accordance with- a property settlement agreement drafted by Hogan’s attorney, the' parties share joint custody of their three children, with Hogan having physical placement. The parties agreed that Hogan could return to Ireland with the children as early as 2009 and that McAndrew would exercise visitation with them in the United States and in Ireland. As part of the agreement, the parties stipulated that all future.child-custody disputes “shall re *720 main under the jurisdiction of the [Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A], [the Uniform Child Custody Jurisdiction and Enforcement Act (UC-CJEA), G.L.1956 chapter 14.1 of title 15,] and that of the Rhode Island Family Court * * The property settlement agreement subsequently ripened into a final judgment of divorce, which included the agreed-upon forum-selection clause; it was entered by consent.
Hogan relocated to Ireland in 2009 with the children, while McAndrew remained in Rhode Island. He visited the children regularly in Ireland, and they spent two weeks with him in Rhode Island each summer. The children were with McAndrew in Rhode Island for their summer holiday in July 2014 when the current dispute before the Court arose; According to McAndrew, the two oldest children had alleged that Hogan had subjected them to physical and emotional abuse. The Irish Child and Family Agency (TUSLA) had become involved after P. reported an incident of alleged abuse to his school counselors. McAndrew claimed that P. and C. did not wish to return to their mother in Ireland. The two children and their younger sister, E., were scheduled to depart for Ireland, with Hogan, on July 16.
On July 9, 2014, McAndrew filed three motions in the Rhode Island Family Court: an ex parte emergency motion to modify custody and placement; a motion for an in camera interview of the three children; and a motion for an order requiring Hogan to submit to a mental health examination. The court granted the ex parte emergency motion. However, on July 16, notwithstanding the marital settlement agreement and the final judgment of divorce, Hogan sought to dismiss the action on the grounds that the Family Court lacked subject matter jurisdiction because the children had resided in Ireland continuously for more than five years. She also moved to vacate the ex parte order. The next day, July 17, at the expedited hearing on Hogan’s motion to vacate the ex parte order,[3] the Family Court justice raised the *721 issue of whether the .Family Court was an inconvenient forum to hear the case. The court continued the matter to September 12 for a hearing on the issues of subject matter jurisdiction and forum non conve-niens.
Meanwhile, Hogan turned to the High Court of Ireland (Irish High Court) for relief and instituted a special summons under Irish domestic legislation.[4] In the special summons, Hogan sought “a declaration that Ireland is the place of habitual residence of the children, and that the Irish High Court has jurisdiction in all matters pertaining to their welfare, custody[,j and access.” On September 9, 2014, three days before the hearing scheduled in Family Court, the Irish High Court granted McAndrew’s motion to stay the special summons proceedings. The Irish High Court concluded that “if [the Rhode Island Family Court] declines jurisdiction, the Irish proceedings will progress. If [the Rhode Island Family Court] assumes jurisdiction, the question of a stay of the Irish proceedings, pending a determination of the substantive matter, may come to be made in Ireland * *
Back in Rhode Island, on September 12 and 15, 2014, the Family Court heard the parties on the issue of jurisdiction. The following facts gleaned from testimony were not disputed. With the exception of yearly visits with their father, the children lived continuously in Ireland with Hogan from January 2009 to July 2014, while McAndrew has resided in the United States. Despite this distance, McAndrew spends multiple weeks with the children each year, with most of their time together being in Ireland. The children have attended Irish schools exclusively from the time they moved to Ireland until August 2014, when P. enrolled in school in Rhode Island. Both Hogan and the children have been receiving support services through TUSLA over the past few months. With the exception of health-care professionals who cared for the children during their stays in Rhode Island, all of the current medical doctors, psychotherapists, and social workers for the children, Hogan, or both are based in Ireland.
McAndrew testified on cross-examination that the parties’ agreement that the Rhode Island Family Court would maintain jurisdiction was “vital” to his decision to assent to the children’s relocation to Ireland. He testified that “[w]ithout it I would never have agreed to let them go. This was a consent agreement, and it was predicated on that very statement.” He stated that allowing Irish courts to have jurisdiction would have been a “deal breaker,” because it was his contention that Irish courts generally do not recognize a divorced father’s right to the joint custody of his children.
McAndrew further testified that he is a physician and a partner in a medical practice. He generally, but not always, receives a biweekly stipend regardless of whether he works during that period. McAndrew also testified to the approximate fair market value of his home, his monthly rental income, and the value of his 401(k) and investment accounts. He receives four weeks of vacation time each year. McAndrew also identified multiple potential witnesses based in Rhode Island who could testify to the quality of his *722 relationship with his children. He testified that he was willing to cover the expenses of any witness who would travel to Rhode Island to testify in Family Court. He also asserted that certain testimony could be provided by teleconference.
Hogan testified that she is a per diem nurse at a local hospital. On- average, Hogan’s wages áre eight times lower than McAndrew’s. She does not receive paid vacation time from her employer and is not paid when she does not work. She recounted the difficulties she experienced in securing child care when she had to travel to Rhode Island for court appearances.
After hearing testimony from both parties, the hearing justice issued a bench decision in which. she declared that the Family Court retained exclusive, continuing jurisdiction pursuant to the UCCJEA.[5] However, the hearing justice went on to conclude that Ireland was a more appropriate forum, for the dispute to be heard and declined to exercise jurisdiction on the ground of forum non conveniens. An order was entered in accordance with the bench decision.[6] McAndrew timely appealed.
Before this Court, McAndrew argues that the hearing justice abused her discretion by not giving proper weight to (1) the mutually agreed upon forum-selection clause set forth in the property settlement agreement and in the final judgment and (2) additional factors enumerated under the UCCJEA.
Standard of Review
“The application of the doctrine of forum non conveniens leaves much to the discretion of the [lower] court.” Kedy v. A.W. Chesterton Co., 946 A.2d 1171, 1185-86 (R.I.2008). This Court will not disturb a decision to grant or deny a motion to dismiss on the grounds of forum non conveniens absent a showing of an abuse of discretion. Id. at 1186. However, this standard does not suggest that this Court merely endorses the findings made by the lower court. As the United States Court of Appeals for the First Circuit has explained:
“Judicial discretion is necessarily broad-rbut it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied.upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.” Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Manufacturing Co., 864 F.2d 927, 929 (1st Cir.1988).
Discussion
This Court accords great sanctity to final judgments entered by consent of the parties. See McCulloch v. McCulloch, 69 A.3d 810, 825 (R.I.2013). Such judgments “cannot be opened, changed, or set aside without the assent of the parties in *723 the absence of fraud, mutual mistake or actual absence of consent.” McEntee v. Davis, 861 A.2d 459, 463 (R.I.2004) (quoting DeFusco v. Giorgio, 440 A.2d 727, 729 (R.I.1982)). Likewise, stipulations between the parties are accorded equal weight. In re McBurney Law Services, Inc., 798 A.2d 877, 881-82 (R.I.2002). Neither final judgments entered by consent nor stipulations may “be set aside simply because a litigant no longer wants to be bound by [their] terms.” Id. at 882.
In an ordinary case, a final judgment entered by consent would be conclusive and only could be set-aside pursuant to Rule 60 of the Family Court Rules of Domestic Relations Procedure. See McBurney, 798 A.2d at 882 (citing Richardson v. Smith, 691 A.2d 543, 546 (R.I.1997)). However, where the final judgment selects the forum to hear a child-custody dispute, the provisions of the UCCJEA impose a narrow- statutory limitation on the enforceability of the judgment. See § 15-14.1-19.
We therefore are called upon, once again, to scrutinize the jurisdictional aspects of the UCCJEA. See, e.g., Sidell v. Sidell, 18 A.3d 499, 504-08 (R.I.2011). “The National Conference of Commissioners on Uniform State Laws promulgated the UCCJEA in 1997 ‘to. deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved.’” Friedman v. Eighth Judicial District Court, — Nev. —, 264 P.3d 1161, 1165 (2011) (quoting In re Custody of A.C., 165 Wash.2d 568, 200 P.3d 689, 691 (2009)). In 2003, Rhode Island became the thirty-second state to adopt the uniform statute.[7]
On the question of an inconvenient forum, the UCCJEA provides '.in relevant part:
" “(a) A court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state[8] is a more appropriate forum. The issue of inconvenient forum may be.raised upon motion of a-party,, the court’s own motion, or request of another court.
“(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. :.For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
“(1) Whether domestic violence has occurred and is likely to continue in the future and'which state could best protect the parties and the child;
“(2) The length of time the child has resided óutside this state;
“(3) The distance between the court in this state and the court in the state that would assume jurisdiction;
*724 “(4) The relative financial circumstances of the parties;
“(5) Any agreement of the parties as to which state should assume jurisdiction;
“(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
“(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
“(8) The familiarity of the court of each state with the facts and issues in the pending litigation.” Section 15-14.1-19.
The statutory language is clear that the Family Court, vested with exclusive, continuing jurisdiction over a child-custody matter, see § 15-14.1-14(a), must engage in a two-part inquiry in accordance with § 16-14.1-19 before it may decline jurisdiction on the grounds that Rhode Island is an .inconvenient forum under the UC-CJEA. The Family Court justice must conclude both that the court “is an inconvenient forum under the circumstances and that a court of another state [or a foreign tribunal] is a more appropriate forum.” Section 15-14.1-19(a) (emphasis added). Subsection (b) of § 16-14.1-19 provides that, before the Family Court decides that Rhode Island is an inconvenient forum, the court must address whether it would be “appropriate for a court of another state to exercise jurisdiction.” This determination is informed by allowing “the parties to submit information” and considering “all relevant factors,” including eight factors enumerated in that subsection. Id. If the court concludes, based on an evaluation of the evidence, that a more appropriate forum exists, the court then proceeds to the second step of the analysis, in which it considers whether this state would be an inconvenient forum under the circumstances of the case at hand.
Section 15-14.1-19 of the UCCJEA codifies the common law doctrine of forum non conveniens[9] and closely tracks the common law test that courts must undertake when determining, whether to decline jurisdiction. See Kedy, 946 A.2d at 1183 (application of the common law doctrine requires a “two-prong analysis” in which the court first must determine whether an alternative forum exists and then must assess the level of inconvenience posed by the present forum). Adopted by this Court in Kedy, “[t]he [common law] doctrine of forum non conveniens is ‘an equitable principle by which a court having jurisdiction may decline to exercise it on considerations of convenience, efficiency, and justice.’” Id. at 1178 (quoting AT & T Corp. v. Sigala, 274 Ga. 137, 549 S.E.2d 373, 375 (2001)). The doctrine is available when the present forum “is significantly inconvenient and the ends of justice would be better served if the action were brought and tried in another forum.” Id. (emphasis added). Accordingly, declining to hear a matter over which the court possesses exclusive, continuing jurisdiction is not a determination that a court should undertake lightly. It should be done only after strict adherence to the statute and careful analysis of the evidence.
*725 With this in mind, we turn our attention to the Family Court decision to decline jurisdiction on the ground of inconvenient forum. In reaching her decision, the hearing justice properly referenced each of the eight factors enumerated in subsection (b) of § 15-14.1-19. She found that the first factor lacked relevance since both parties had stipulated that domestic violence was not an issue. She found that the second factor “weighted] in favor of declining jurisdiction and allowing Ireland to assume jurisdiction” because the children had resided in Ireland since 2009. For the third factor — distance between the courts — the hearing justice observed that one of the parties will have to embark on a transatlantic flight regardless of which court eventually hears the case on its merits. Nevertheless,'the hearing justice weighed this factor in favor of Hogan, given her struggles with child care and her 'employment situation. On the issue of the parties’ relative financial circumstances — the fourth factor — the hearing justice noted that McAndrew was in a stronger financial position than Hogan. Thus, she interpreted the fourth factor in favor of declining jurisdiction.
Turning to the fifth factor — “[a]ny agreement of the parties as to which state should assume jurisdiction,” § 15 — 14.1— 19(b)(5) — she noted:
“[T]he forum[-]selection clause is one out of eight factors.
“In other words, just because it’s in a property settlement agreement doesn’t make it absolutely binding. The Court must consider all of the factors in the statute, particularly in matters relating to children where the court always has final decisionmaking authority. Clearly the parties here did have an agreement in the final judgment and in the property settlement agreement that Rhode Island would maintain jurisdiction; and, therefore, this factor.weighs in favor of Rhode Island maintaining jurisdiction.”
Next, the hearing justice considered the sixth factor — the nature and location of the evidence required to resolve the pending litigation. In doing so, she entertained many of the factors this Court set forth in Pettinato v. Pettinato, 582 A.2d 909, 913-14 (R.I.1990), since the Pettinato factors would govern the court’s substantive analysis of McAndrew’s motions for a change in placement if the Family Court were to retain jurisdiction. In particular, the hearing justice observed that two of the three children were located in Ireland, as was the evidence related to their adjustment to home, school, and community. Since Hogan’s fitness as a parent would lie at the center of any inquiry on the merits, the hearing justice observed that the majority of potential witnesses who could attest to the children’s relationship with their mother resided in Ireland. She also noted that Ireland was the home base for most potential witnesses who could testify to the state of Hogan’s mental health. Accordingly, she concluded that the sixth factor “weighs most heavily” toward declining jurisdiction. '
The hearing justice found that the seventh factor — the ability of each court to decide the matter expeditiously — tilted neither in favor of retaining jurisdiction nor declining it. Finally, the court found that the eighth factor — each court’s respective familiarity with the litigation— tilted “somewhat in favor of Rhode Island” yet not “heavily” because, although the divorce had been finalized in Family Court, the hearing justice herself had not presided over the matter until the most recent round of motions. .
After laying out each of the. eight statutory. factors, the hearing justice stated:
“In reviewing all of these factors and in considering all . of them, the Court must *726 conclude that the weight of * * * the statutory factors! ] compels-, and particularly where the evidence is located for those . motions which are substantive, that the Court must decline to exercise jurisdiction in this matter, and. that the more appropriate forum for this matter to be heard would be Ireland.”
We review the decision in light of the two-step analysis prescribed by § 15-14.1-19 of the UCCJEA.
I. More Appropriate Forum
We first consider the factor that lies at the heart of McAndrew’s appeal, “[a]ny agreement of the .parties as to which state should assume jurisdiction,” § 15-14.1-19(b)(5), and the hearing justice’s treatment of that factor. This Court previously'touched upon the role of forum-selection clauses under the UCCJEA in Sidell. In that case, the defendant father, a former resident, of Rhode Island, filed post-divorce motions concerning childrcustody and support orders issued by the Rhode..Island Family Court. Sidell,, 18 A,3d at 502-03. However, ,at the.time the defendant filed his motions, both parents and the child no longer lived in Rhode Island. Id. at 505. The defendant contended, inter alia, that the Family Court was vested with jurisdiction because the parties had stipulated in their marital settlement agreement that Rhode Island would retáin exclusive jurisdiction over the matter. Id. at 504. Since neither parent nor the child resided in Rhode Island, this Court determined that Rhode Island courts lacked exclusive, continuing jurisdiction under § 15-14,l-14(a)(2). 'Si-dell, 18 A,3d at 505, 508. We concluded that a forum-selection clause does not confer a court with subject matter jurisdiction when such jurisdiction otherwise is absent. Id. at 508. However, we noted that, in situations where a court is, in fact, vested with subject matter jurisdiction, “[a]n enforceable forum-selection clause * * * settles the proper venue for the case and prevents ‘a party that has agreed to be bound * * *■ [from] ^ * * asserting] forum■ non conveniens as a ground for dismissing a suit brought in the chosen forum.’ ” Id. at 507 (quoting American Biophysics Corp. v. Dubois Marine Specialties, 411 F.Supp.2d 61, 62 (D.R.I.2006)). In the case before us, unlike - the custody dispute- in Sidell ■ the Family Court has exclusive, continuing jurisdiction over this dispute. The issue before us presents precisely the scenario envisioned in Sidell.
The Family Court justice addressed Si-dell briefly in her bench decision. She acknowledged that parties may enter into a forum — selection agreement when the court retains subject matter jurisdiction but that such an agreement constitutes only one of the eight factors listed in § 15-14.1-19(b). In her decision, the Family Court justice overlooked McAndrew’s testimony that the forum- — selection clause had been a predominant factor in his agreement to allow the children to move to Ireland with their mother and that the parties had entered into the agreement in anticipation of their relocation. The hearing justice also failed to address the nature of the agreement as a final judgment by consent and the high value that is conferred upon such judgments. We deem these to be material factors deserving significant weight, but which were ignored by the hearing justice. See Independent Oil and Chemical Workers of Quincy, Inc., 864 F.2d at 929.
We next consider the hearing justice’s treatment of the seventh factor— “the ability of the court of each state to decide the issue expeditiously and the procedures necessary to- present • the evidence.” Section 15-14.1-19(b)(7), We be *727 gin by noting that the. children are not living in another state bub have relocated to a foreign country. The hearing justice noted the paucity of evidence before-the court regarding the ability of the court in Ireland to hear and decide this case.. She observed that “the only evidence the [Family] .Court has of * *. * proceedings in Ireland” is the Irish High Court decision. She calculated the amount of time that elapsed between the filing of the special summons by Hogan on July 30, 2014, and the decision issued by the. Irish High Court on September 9. Based on this information, the hearing justice concluded that the proceedings in Ireland would be expeditious and consequently that the seventh factor was of equal weight.[10] The hearing justice made no note of the procedures necessary to present the evidence in Irish courts, nor was such evidence before the Family Court. In particular, neither -party provided the court- with a clear understanding about an issue of particular concern- to McAndrew — -whether the courts in Ireland would recognize an American joint-custody arrangement — nor could the parties do so on appeal to this Court. Moreover, there was no evidence before the Family Court — and the hearing justice did not inquire — whether the wishes of the children entangled in custody disputes are relevant or . even considered by the Irish courts-,[11] - The- dearth of information before the Family Court prompts us to conclude that the hearing justice improperly determined' that the seventh factor weighed equally in favor of Ireland and Rhode Island. See Independent Oil and Chemical Workers of Quincy, Inc., 864 F.2d at 929.
We pause to stress that our concern over the inadequacy of evidence before the Family Court on this point bears no reflection upon our coñfidencé in the ability of the judicial system in the Republic of Ireland to resolve custody disputes impartially or expeditiously. Much like the “best interests of the child” standard employed by the Family Court, see, e.g., Chiappone v. Chiappone, 984 A.2d 32, 38 (R.I.2009), Ireland has a long-established tradition of recognizing the welfare of the children as “the first and paramount consideration” in the determination of custody disputes.[12] Our research instructs us that joint custody such as that currently held by McAn-drew and Hogan is available by statute and granted regularly in Ireland.[13] Irish statutory authority provides that a father maintains guardianship of his minor chil *728 dren following divorce from their mother [14] and may “apply to [an Irish] court for its direction on any question affecting [their] welfare,” including custody of and. access to the children.[15] Accordingly, our conclusion that the Family Court justice improperly relied on insufficient evidence before the court solely relates to the question of whether Ireland is a more appropriate forum to hear and decide this particular dispute and the dearth of findings on this question by the Family Court.
We now turn to the conclusion the hearing justice. reached after discussing each of the eight factors. With the exception of the sixth factor — “[t]he nature and location of the evidence required to resolve the pending litigation,” § 15-14.1-19(b)(6) — the hearing justice appears to have given equal weight' to most of the factors and then based her conclusion on the forum with the greatest number of factors in its favor. She did not consider the interplay among the factors. She also found that the sixth factor — the location of the social service workers and the location of two (now one) of the children in Ireland — was of foremost importance in deciding that Ireland was the most appropriate forum. However, she did not set forth her reasons for doing so and overlooked McAndrew’s contention that testimony from witnesses in Ireland could be obtained through teleconference or that-written reports could be transmitted electronically.[16] In reaching the conclusion that Ireland constituted a more appropriate forum, the hearing justice overlooked and misconceived material evidence, and she gave improper weight to the seventh factor for which there was insufficient evidence and the record otherwise was silent. She also overlooked the fact that the agreement between the parties had ripened into a final judgment and served as a crucial condition for McAndrew’s consent to his children relocating to Ireland, which merited' at least some deference from the court.
II. Convenience of Rhode Island as a Forum
As we elucidated above, the inquiry under § 15-14.1-19 of the UCCJEA requires a two-part analysis. The court first must determine that a more appropriate forum exists. Upon reaching such a conclusion, the- court only may decline jurisdiction if it makes a separate finding that Rhode Island-is an inconvenient forum to hear the matter. The record indicates that the hearing justice performed only the first step set forth in § 15-14.1-19. She merely determined that the weight of the statutory factors required the court to decline jurisdiction in favor of Ireland. Absent from the decision is an independent finding that Rhode Island was “significantly inconvenient and [that] the ends of justice would be better served if the action were brought and tried in another forum.” *729 Kedy, 946 A.2d at 1178. Even when reviewed as a whole, there is no determination that it would be inconvenient or unjust to proceed in Rhode Island, only that Rhode Island was not as convenient a forum as Ireland. A court may not decline jurisdiction under the UCCJEA merely because another forum of equal or greater convenience exists.
We therefore are of the opinion that the hearing justice abused her discretion in executing both steps of the necessary two-part analysis under § 15-14.1-19 of the UCCJEA and by subsequently declining jurisdiction on the ground of forum non conveniens.
Conclusion
For' the reasons set forth above, we vacate the judgment of the Family Court. The case is remanded to the Family Court for hearing on the defendant’s motion to modify custody and placement and for further proceedings in accordance with this decision. The papers shall be returned to the Family Court.
Justice FLAHERTY did not participate.

. After the divorce, plaintiff resumed use of her maiden name.

. To afford the family a measure of privacy, we honor McAndrew’s request to identify the children by their first initials.

. On July 17, 2014, the Family Court vacated its ex parte order based on the hearing justice’s finding that an emergency order was no longer warranted, The parties reached an agreement that P. would remain with his father until at least September 12, the date of the hearing on jurisdiction and forum non conveniens, and that he may enroll in school in Rhode Island, Also by agreement, C. would extend her visit with McAndrew in Rhode Island until mid-August. C. subsequently returned to Ireland to live with Hogan, although not on the date initially scheduled, By consent order, P. remained in Rhode Island with his father.
On January 28, 2015, with C. in Ireland, McAndrew filed a motion in this Court seeking an emergency order granting him temporary custody and placement of C„ or, alternatively, a limited remand to the Family Court. In support of his motion, McAndrew alleged that Hogan had "abandoned” C. at Hogan’s brother’s home in Ireland on Christmas Eve after an argument between the mother and daughter. McAndrew contended that C. had been residing with her uncle since that date but was at imminent risk of being placed into Irish foster care. He stated that TUSLA had recommended placement with McAndrew in the United States. In support of her objection to McAndrew’s motion, Hogan again asserted that the Irish courts were the appropriate forum to hear the matter. On January 29, 2015, this Court remanded the case to the Family Court for the limited purpose of entertaining McAndrew's most recent motion, and the Family Court subsequently held a hearing. It was conceded at oral argument that a social worker employed by TUSLA who had been working with the family testified via teleconference from Ireland. Hogan, who was also in Ireland at the time, refused to testify telephonically and did not participate as a witness. Exhibits that were before the Family Court justice included reports by TUSLA transmitted from Ireland. On March II, the Family Court granted McAndrew’s motion to modify the custody and placement of C. At oral argument, counsel for both parties confirmed that C. and her older brother, *721 P., continued to reside in Rhode Island with McAndrew, while E. remained in Ireland with Hogan.

. Hogan also sought relief under the Hague Convention on the Civil Aspects of International Child Abduction, but the Irish High Court concluded that, "for the present purposes, * * * the proceedings brought by [Hogan] are not properly [characterized] as Hague Convention proceedings,”

. General Laws 1956 § 15 — 14.1—14(a) provides in pertinent part:
able in this state concerning the child’s care, protection, training, and personal relationships; or. (2) court of this state or a court of another, state determines that the child [and] the child’s parents * * * do not presently reside in this state."
“[A] court of this state which has made a child custody determination consistent with this chapter has exclusive, continuing jurisdiction over the determination until: (1) A court of this state determines that neither [sic ] the child, the child’s parents, and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer avail-

. Because this order possesses obvious .elements of finality, we consider it a final order. See McAuslan v. McAuslan, 34 R.I. 462, 472, 83 A, 837, 841 (1912).

. See UCCJEA Adoptions,'National Conference of Commissioners on Uniform State Laws, http://www.uniformlaws.org/Shared/ docs/UCCJEAadoptions.pdf (last visited Mar. 2, 2016). To date, forty-nine states and the District -of Columbia have adopted the UC-CJEA. See Legislative Fact Sheet - Child Custody Jurisdiction and Enforcement vAct, National Conference of Commissioners on Uniform State Laws, http://www.uniformlaws. org/LegislativeFactSheet.aspxPtitle^Child ■ Custody Jurisdiction and Enforcement Act (last visited Mar. 2, 2016).-

. Although enacted to resolve custody disputes transcending 'state lines, the -UCCJEA also applies when the alternative forum is in a foreign country. See§ 15-14.1-5(a).

. See UCCJEA prefatory note, 9 U.L.A. 650 (1997) (UCCJEA "harmonizefs] the law on * * * forum non conveniens ”); see also Uniform Child Custody Jurisdiction Act § 7 cmt., 9 U.L.A. 499 (1968) (applying the common law principle of inconvenient forum to the Uniform Child Custody Jurisdiction Act (UC-CJA)); Uniform Child Custody Jurisdiction & Enforcement Act § 207 cmt., 9 U.L.A. 683 (1997) (retaining the focus of the UCCJA, predecessor to the UCCJEA).

. We note that, although the hearing justice had acknowledged elsewhere in her decision that the Limerick District Court would hear the substántive matter should the Rhode Island Family Court decline jurisdiction, she failed to consider whether the Limerick District Court would be equally as expeditious as the Irish High Court that had issued the judgment on the smnmons. There'was ho evidence before the court to' support such a determination.

. At oral argument before this Court, the parties disclosed that there may be legislation moving through the.Irish Parliament that, if approved by the Irish High Court, would give voice to children in custody disputes. No ’ citations to pending legislation were provided.

. Geoffrey Shannon, Child Custody Law of the Republic of Ireland, 39 Fám. L.Q. 353, 362 (2005) (quoting Guardianship of Infants Act 1964 § 3 (Act No. 7/1964) (Ir.), available at http://www.irishstatutebook.ie/eli/! 964/act/7/ enacted/en/print.html).

. See, e.g.,. Evelyn Mahon •& Elena Moore, Post-Separation Parenting: A study of separation and divorce agreements made in the Family Law Circuit Courts of Ireland and their implications for parent-child contact and family lives, Office of the Minister for Children-& Youth Affairs 7-8, 60 (2011), http://www.dcya. gov.ie/documents/publications/Post_ Separation_Parenting.pdf; Shannon, 39 Fam. L.Q. at 365 (citing Guardianship of Infants Act 1964 §11.)

. Family Law (Divorce) Act 1996 § 10(2) (Act No. 33/1996) (Ir.), available at http:// www.irishstatutebook.ie/eli/1996/act/33/ enacted/en/print; see also Guardianship of Infants Act 1964 § 6(1) (‘‘The father and mother of an infant shall be guardians of the infant jointly.”).

. Guardianship of Infants Act 1964 § 11(1), (2)(a).

. We note that, although we benefit from hindsight not available to the hearing justice at the time she declined jurisdiction, (he transatlantic nature of the evidence did not impede the ability of the court to conduct a hearing on McAndrew’s emergency motion for custody and placement of C. in January 2015. As we discussed in a footnote above, the court heard the testimony of a key witness in Ireland through teleconference, and evidence that originated in Ireland was sent to the parties in Rhode Island to be introduced as exhibits.'