**Supreme Court**

No. 2014-255-Appeal.
(K06-136)

Valerie M. (McAndrew) Hogan       :

v.       :

Philip A. McAndrew.       :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2014-255-Appeal.
(K06-136)
(Concurring and dissenting
 Opinion starts on Page 18)

Valerie M. (McAndrew) Hogan     :

v.          :

Philip A. McAndrew.     :

Present:  Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  The defendant, Philip A. McAndrew (McAndrew or defendant) is before the Supreme Court on appeal from an order of a justice of the Family Court, declining to exercise jurisdiction over an ongoing custody dispute between the defendant and his former wife, Valerie M. Hogan[1] (Hogan or plaintiff), on the ground of <u>forum</u> <u>non</u> <u>conveniens</u>. For the reasons set forth within, we vacate the judgment of the Family Court.

**Facts and Travel**

The parties, both dual citizens of the United States and the Republic of Ireland (Ireland), married in 1996.  Their son, P.,[2] was born in 1999, C. arrived in 2000, and E., the youngest, was born in 2004.   McAndrew and Hogan chose to part ways in 2006, and a divorce was granted in Rhode Island Family Court in 2008.  In accordance with a property settlement agreement drafted

---

[1] After the divorce, plaintiff resumed use of her maiden name.

[2] To afford the family a measure of privacy, we honor McAndrew's request to identify the children by their first initials.

by Hogan's attorney, the parties share joint custody of their three children, with Hogan having physical placement. The parties agreed that Hogan could return to Ireland with the children as early as 2009 and that McAndrew would exercise visitation with them in the United States and in Ireland. As part of the agreement, the parties stipulated that all future child-custody disputes "shall remain under the jurisdiction of the [Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A], [the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), G.L. 1956 chapter 14.1 of title 15,] and that of the Rhode Island Family Court * * *." The property settlement agreement subsequently ripened into a final judgment of divorce, which included the agreed-upon forum-selection clause; it was entered by consent.

Hogan relocated to Ireland in 2009 with the children, while McAndrew remained in Rhode Island. He visited the children regularly in Ireland, and they spent two weeks with him in Rhode Island each summer. The children were with McAndrew in Rhode Island for their summer holiday in July 2014 when the current dispute before the Court arose. According to McAndrew, the two oldest children had alleged that Hogan had subjected them to physical and emotional abuse. The Irish Child and Family Agency (TUSLA) had become involved after P. reported an incident of alleged abuse to his school counselors. McAndrew claimed that P. and C. did not wish to return to their mother in Ireland. The two children and their younger sister, E., were scheduled to depart for Ireland, with Hogan, on July 16.

On July 9, 2014, McAndrew filed three motions in the Rhode Island Family Court: an ex parte emergency motion to modify custody and placement; a motion for an in camera interview of the three children; and a motion for an order requiring Hogan to submit to a mental health examination. The court granted the ex parte emergency motion. However, on July 16, notwithstanding the marital settlement agreement and the final judgment of divorce, Hogan

sought to dismiss the action on the grounds that the Family Court lacked subject matter jurisdiction because the children had resided in Ireland continuously for more than five years. She also moved to vacate the ex parte order. The next day, July 17, at the expedited hearing on Hogan's motion to vacate the ex parte order,[3] the Family Court justice raised the issue of whether the Family Court was an inconvenient forum to hear the case. The court continued the matter to September 12 for a hearing on the issues of subject matter jurisdiction and forum non conveniens.

---

[3] On July 17, 2014, the Family Court vacated its ex parte order based on the hearing justice's finding that an emergency order was no longer warranted. The parties reached an agreement that P. would remain with his father until at least September 12, the date of the hearing on jurisdiction and forum non conveniens, and that he may enroll in school in Rhode Island. Also by agreement, C. would extend her visit with McAndrew in Rhode Island until mid-August. C. subsequently returned to Ireland to live with Hogan, although not on the date initially scheduled. By consent order, P. remained in Rhode Island with his father.

On January 28, 2015, with C. in Ireland, McAndrew filed a motion in this Court seeking an emergency order granting him temporary custody and placement of C., or, alternatively, a limited remand to the Family Court. In support of his motion, McAndrew alleged that Hogan had "abandoned" C. at Hogan's brother's home in Ireland on Christmas Eve after an argument between the mother and daughter. McAndrew contended that C. had been residing with her uncle since that date but was at imminent risk of being placed into Irish foster care. He stated that TUSLA had recommended placement with McAndrew in the United States. In support of her objection to McAndrew's motion, Hogan again asserted that the Irish courts were the appropriate forum to hear the matter. On January 29, 2015, this Court remanded the case to the Family Court for the limited purpose of entertaining McAndrew's most recent motion, and the Family Court subsequently held a hearing. It was conceded at oral argument that a social worker employed by TUSLA who had been working with the family testified via teleconference from Ireland. Hogan, who was also in Ireland at the time, refused to testify telephonically and did not participate as a witness. Exhibits that were before the Family Court justice included reports by TUSLA transmitted from Ireland. On March 11, the Family Court granted McAndrew's motion to modify the custody and placement of C. At oral argument, counsel for both parties confirmed that C. and her older brother, P., continued to reside in Rhode Island with McAndrew, while E. remained in Ireland with Hogan.

- 3 -

Meanwhile, Hogan turned to the High Court of Ireland (Irish High Court) for relief and instituted a special summons under Irish domestic legislation.[4] In the special summons, Hogan sought "a declaration that Ireland is the place of habitual residence of the children, and that the Irish High Court has jurisdiction in all matters pertaining to their welfare, custody[,] and access." On September 9, 2014, three days before the hearing scheduled in Family Court, the Irish High Court granted McAndrew's motion to stay the special summons proceedings. The Irish High Court concluded that "if [the Rhode Island Family Court] declines jurisdiction, the Irish proceedings will progress. If [the Rhode Island Family Court] assumes jurisdiction, the question of a stay of the Irish proceedings, pending a determination of the substantive matter, may come to be made in Ireland * * *."

Back in Rhode Island, on September 12 and 15, 2014, the Family Court heard the parties on the issue of jurisdiction. The following facts gleaned from testimony were not disputed. With the exception of yearly visits with their father, the children lived continuously in Ireland with Hogan from January 2009 to July 2014, while McAndrew has resided in the United States. Despite this distance, McAndrew spends multiple weeks with the children each year, with most of their time together being in Ireland. The children have attended Irish schools exclusively from the time they moved to Ireland until August 2014, when P. enrolled in school in Rhode Island. Both Hogan and the children have been receiving support services through TUSLA over the past few months. With the exception of health-care professionals who cared for the children during

---

[4] Hogan also sought relief under the Hague Convention on the Civil Aspects of International Child Abduction, but the Irish High Court concluded that, "for the present purposes, * * * the proceedings brought by [Hogan] are not properly [characterized] as Hague Convention proceedings."

their stays in Rhode Island, all of the current medical doctors, psychotherapists, and social workers for the children, Hogan, or both are based in Ireland.

McAndrew testified on cross-examination that the parties' agreement that the Rhode Island Family Court would maintain jurisdiction was "vital" to his decision to assent to the children's relocation to Ireland. He testified that "[w]ithout it I would never have agreed to let them go. This was a consent agreement, and it was predicated on that very statement." He stated that allowing Irish courts to have jurisdiction would have been a "deal breaker," because it was his contention that Irish courts generally do not recognize a divorced father's right to the joint custody of his children.

McAndrew further testified that he is a physician and a partner in a medical practice. He generally, but not always, receives a biweekly stipend regardless of whether he works during that period. McAndrew also testified to the approximate fair market value of his home, his monthly rental income, and the value of his 401(k) and investment accounts. He receives four weeks of vacation time each year. McAndrew also identified multiple potential witnesses based in Rhode Island who could testify to the quality of his relationship with his children. He testified that he was willing to cover the expenses of any witness who would travel to Rhode Island to testify in Family Court. He also asserted that certain testimony could be provided by teleconference.

Hogan testified that she is a per diem nurse at a local hospital. On average, Hogan's wages are eight times lower than McAndrew's. She does not receive paid vacation time from her employer and is not paid when she does not work. She recounted the difficulties she experienced in securing child care when she had to travel to Rhode Island for court appearances.

After hearing testimony from both parties, the hearing justice issued a bench decision in which she declared that the Family Court retained exclusive, continuing jurisdiction pursuant to

the UCCJEA.[5]   However, the hearing justice went on to conclude that Ireland was a more appropriate forum for the dispute to be heard and declined to exercise jurisdiction on the ground of <u>forum non conveniens</u>.  An order was entered in accordance with the bench decision.[6] McAndrew timely appealed.

Before this Court, McAndrew argues that the hearing justice abused her discretion by not giving proper weight to (1) the mutually agreed upon forum-selection clause set forth in the property settlement agreement and in the final judgment and (2) additional factors enumerated under the UCCJEA.

**Standard of Review**

"The application of the doctrine of <u>forum non conveniens</u> leaves much to the discretion of the [lower] court." <u>Kedy v. A.W. Chesterton Co.</u>, 946 A.2d 1171, 1185-86 (R.I. 2008).  This Court will not disturb a decision to grant or deny a motion to dismiss on the grounds of <u>forum non conveniens</u> absent a showing of an abuse of discretion. <u>Id.</u> at 1186.  However, this standard does not suggest that this Court merely endorses the findings made by the lower court.  As the United States Court of Appeals for the First Circuit has explained:

---

[5] General Laws 1956 § 15-14.1-14(a) provides in pertinent part:

> "[A] court of this state which has made a child custody determination consistent with this chapter has exclusive, continuing jurisdiction over the determination until: (1) A court of this state determines that neither [sic] the child, the child's parents, and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or (2) A court of this state or a court of another state determines that the child [and] the child's parents * * * do not presently reside in this state."

[6] Because this order possesses obvious elements of finality, we consider it a final order. <u>See</u> <u>McAuslan v. McAuslan</u>, 34 R.I. 462, 472, 83 A. 837, 841 (1912).

> "Judicial discretion is necessarily broad—but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Manufacturing Co., 864 F.2d 927, 929 (1st Cir. 1988).

**Discussion**

This Court accords great sanctity to final judgments entered by consent of the parties. See McCulloch v. McCulloch, 69 A.3d 810, 825 (R.I. 2013). Such judgments "cannot be opened, changed, or set aside without the assent of the parties in the absence of fraud, mutual mistake or actual absence of consent." McEntee v. Davis, 861 A.2d 459, 463 (R.I. 2004) (quoting DeFusco v. Giorgio, 440 A.2d 727, 729 (R.I. 1982)). Likewise, stipulations between the parties are accorded equal weight. In re McBurney Law Services, Inc., 798 A.2d 877, 881-82 (R.I. 2002). Neither final judgments entered by consent nor stipulations may "be set aside simply because a litigant no longer wants to be bound by [their] terms." Id. at 882.

In an ordinary case, a final judgment entered by consent would be conclusive and only could be set aside pursuant to Rule 60 of the Family Court Rules of Domestic Relations Procedure. See McBurney, 798 A.2d at 882 (citing Richardson v. Smith, 691 A.2d 543, 546 (R.I. 1997)). However, where the final judgment selects the forum to hear a child-custody dispute, the provisions of the UCCJEA impose a narrow statutory limitation on the enforceability of the judgment. See § 15-14.1-19.

We therefore are called upon, once again, to scrutinize the jurisdictional aspects of the UCCJEA. See, e.g., Sidell v. Sidell, 18 A.3d 499, 504-08 (R.I. 2011). "The National Conference of Commissioners on Uniform State Laws promulgated the UCCJEA in 1997 'to deal with the problems of competing jurisdictions entering conflicting interstate child custody

orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved.'" Friedman v. Eighth Judicial District Court, 264 P.3d 1161, 1165 (Nev. 2011) (quoting In re Custody of A.C., 200 P.3d 689, 691 (Wash. 2009)). In 2003, Rhode Island became the thirty-second state to adopt the uniform statute.[7]

On the question of an inconvenient forum, the UCCJEA provides in relevant part:

> "(a) A court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state[8] is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

> "(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

> "(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

> "(2) The length of time the child has resided outside this state;

> "(3) The distance between the court in this state and the court in the state that would assume jurisdiction;

> "(4) The relative financial circumstances of the parties;

---

[7] See UCCJEA Adoptions, National Conference of Commissioners on Uniform State Laws, http://www.uniformlaws.org/Shared/docs/UCCJEAadoptions.pdf (last visited Feb. 11, 2016). To date, thirty-nine states and the District of Columbia have adopted the UCCJEA. See id.

[8] Although enacted to resolve custody disputes transcending state lines, the UCCJEA also applies when the alternative forum is in a foreign country. See § 15-14.1-5(a).

"(5) Any agreement of the parties as to which state should assume jurisdiction;

"(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

"(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

"(8) The familiarity of the court of each state with the facts and issues in the pending litigation."  Section 15-14.1-19.

The statutory language is clear that the Family Court, vested with exclusive, continuing jurisdiction over a child-custody matter, see § 15-14.1-14(a), must engage in a two-part inquiry in accordance with § 15-14.1-19 before it may decline jurisdiction on the grounds that Rhode Island is an inconvenient forum under the UCCJEA.  The Family Court justice must conclude both that the court "is an inconvenient forum under the circumstances and that a court of another state [or a foreign tribunal] is a more appropriate forum." Section 15-14.1-19(a) (emphasis added).  Subsection (b) of § 15-14.1-19 provides that, before the Family Court decides that Rhode Island is an inconvenient forum, the court must address whether it would be "appropriate for a court of another state to exercise jurisdiction."  This determination is informed by allowing "the parties to submit information" and considering "all relevant factors," including eight factors enumerated in that subsection. Id.  If the court concludes, based on an evaluation of the evidence, that a more appropriate forum exists, the court then proceeds to the second step of the analysis, in which it considers whether this state would be an inconvenient forum under the circumstances of the case at hand.

Section 15-14.1-19 of the UCCJEA codifies the common law doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>[9] and closely tracks the common law test that courts must undertake when determining whether to decline jurisdiction. <u>See</u> <u>Kedy</u>, 946 A.2d at 1183 (application of the common law doctrine requires a "two-prong analysis" in which the court first must determine whether an alternative forum exists and then must assess the level of inconvenience posed by the present forum). Adopted by this Court in <u>Kedy</u>, "[t]he [common law] doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> is 'an equitable principle by which a court having jurisdiction may decline to exercise it on considerations of convenience, efficiency, and justice.'" <u>Id.</u> at 1178 (quoting <u>AT & T Corp. v. Sigala</u>, 549 S.E.2d 373, 375 (Ga. 2001)). The doctrine is available when the present forum "is <u>significantly</u> inconvenient and the ends of justice would be better served if the action were brought and tried in another forum." <u>Id.</u> (emphasis added). Accordingly, declining to hear a matter over which the court possesses exclusive, continuing jurisdiction is not a determination that a court should undertake lightly. It should be done only after strict adherence to the statute and careful analysis of the evidence.

With this in mind, we turn our attention to the Family Court decision to decline jurisdiction on the ground of inconvenient forum. In reaching her decision, the hearing justice properly referenced each of the eight factors enumerated in subsection (b) of § 15-14.1-19. She found that the first factor lacked relevance since both parties had stipulated that domestic

---

[9] <u>See</u> UCCJEA prefatory note, 9 U.L.A. 650 (1997) (UCCJEA "harmonize[s] the law on * * * <u>forum</u> <u>non</u> <u>conveniens</u>"); <u>see</u> <u>also</u> Uniform Child Custody Jurisdiction Act § 7 cmt., 9 U.L.A. 499 (1968) (applying the common law principle of inconvenient forum to the Uniform Child Custody Jurisdiction Act (UCCJA)); Uniform Child Custody Jurisdiction & Enforcement Act § 207 cmt., 9 U.L.A. 683 (1997) (retaining the focus of the UCCJA, predecessor to the UCCJEA).

violence was not an issue. She found that the second factor "weigh[ed] in favor of declining jurisdiction and allowing Ireland to assume jurisdiction" because the children had resided in Ireland since 2009. For the third factor—distance between the courts—the hearing justice observed that one of the parties will have to embark on a transatlantic flight regardless of which court eventually hears the case on its merits. Nevertheless, the hearing justice weighed this factor in favor of Hogan, given her struggles with child care and her employment situation. On the issue of the parties' relative financial circumstances—the fourth factor—the hearing justice noted that McAndrew was in a stronger financial position than Hogan. Thus, she interpreted the fourth factor in favor of declining jurisdiction.

Turning to the fifth factor—"[a]ny agreement of the parties as to which state should assume jurisdiction," § 15-14.1-19(b)(5)—she noted:

> "[T]he forum[-]selection clause is one out of eight factors.
>
> "In other words, just because it's in a property settlement agreement doesn't make it absolutely binding. The Court must consider all of the factors in the statute, particularly in matters relating to children where the court always has final decision-making authority. Clearly the parties here did have an agreement in the final judgment and in the property settlement agreement that Rhode Island would maintain jurisdiction; and, therefore, this factor weighs in favor of Rhode Island maintaining jurisdiction."

Next, the hearing justice considered the sixth factor—the nature and location of the evidence required to resolve the pending litigation. In doing so, she entertained many of the factors this Court set forth in Pettinato v. Pettinato, 582 A.2d 909, 913-14 (R.I. 1990), since the Pettinato factors would govern the court's substantive analysis of McAndrew's motions for a change in placement if the Family Court were to retain jurisdiction. In particular, the hearing justice observed that two of the three children were located in Ireland, as was the evidence related to their adjustment to home, school, and community. Since Hogan's fitness as a parent

would lie at the center of any inquiry on the merits, the hearing justice observed that the majority of potential witnesses who could attest to the children's relationship with their mother resided in Ireland. She also noted that Ireland was the home base for most potential witnesses who could testify to the state of Hogan's mental health. Accordingly, she concluded that the sixth factor "weighs most heavily" toward declining jurisdiction.

The hearing justice found that the seventh factor—the ability of each court to decide the matter expeditiously—tilted neither in favor of retaining jurisdiction nor declining it. Finally, the court found that the eighth factor—each court's respective familiarity with the litigation—tilted "somewhat in favor of Rhode Island" yet not "heavily" because, although the divorce had been finalized in Family Court, the hearing justice herself had not presided over the matter until the most recent round of motions.

After laying out each of the eight statutory factors, the hearing justice stated:

> "In reviewing all of these factors and in considering all of them, the Court must conclude that the weight of * * * the statutory factors[ ] compels, and particularly where the evidence is located for those motions which are substantive, that the Court must decline to exercise jurisdiction in this matter, and that the more appropriate forum for this matter to be heard would be Ireland."

We review the decision in light of the two-step analysis prescribed by § 15-14.1-19 of the UCCJEA.

## I. More Appropriate Forum

We first consider the factor that lies at the heart of McAndrew's appeal, "[a]ny agreement of the parties as to which state should assume jurisdiction," § 15-14.1-19(b)(5), and the hearing justice's treatment of that factor. This Court previously touched upon the role of forum-selection clauses under the UCCJEA in Sidell. In that case, the defendant father, a former resident of Rhode Island, filed post-divorce motions concerning child-custody and support orders issued by

- 12 -

the Rhode Island Family Court. Sidell, 18 A.3d at 502-03. However, at the time the defendant filed his motions, both parents and the child no longer lived in Rhode Island. Id. at 505. The defendant contended, inter alia, that the Family Court was vested with jurisdiction because the parties had stipulated in their marital settlement agreement that Rhode Island would retain exclusive jurisdiction over the matter. Id. at 504. Since neither parent nor the child resided in Rhode Island, this Court determined that Rhode Island courts lacked exclusive, continuing jurisdiction under § 15-14.1-14(a)(2). Sidell, 18 A.3d at 505, 508. We concluded that a forum-selection clause does not confer a court with subject matter jurisdiction when such jurisdiction otherwise is absent. Id. at 508. However, we noted that, in situations where a court is, in fact, vested with subject matter jurisdiction, "[a]n enforceable forum-selection clause * * * settles the proper venue for the case and prevents 'a party that has agreed to be bound * * * [from] * * * assert[ing] forum non conveniens as a ground for dismissing a suit brought in the chosen forum.'" Id. at 507 (quoting American Biophysics Corp. v. Dubois Marine Specialties, 411 F. Supp. 2d 61, 62 (D.R.I. 2006)). In the case before us, unlike the custody dispute in Sidell, the Family Court has exclusive, continuing jurisdiction over this dispute. The issue before us presents precisely the scenario envisioned in Sidell.

The Family Court justice addressed Sidell briefly in her bench decision. She acknowledged that parties may enter into a forum-selection agreement when the court retains subject matter jurisdiction but that such an agreement constitutes only one of the eight factors listed in § 15-14.1-19(b). In her decision, the Family Court justice overlooked McAndrew's testimony that the forum-selection clause had been a predominant factor in his agreement to allow the children to move to Ireland with their mother and that the parties had entered into the agreement in anticipation of their relocation. The hearing justice also failed to address the nature

of the agreement as a final judgment by consent and the high value that is conferred upon such judgments. We deem these to be material factors deserving significant weight, but which were ignored by the hearing justice. See Independent Oil and Chemical Workers of Quincy, Inc., 864 F.2d at 929.

We next consider the hearing justice's treatment of the seventh factor—"the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence." Section 15-14.1-19(b)(7). We begin by noting that the children are not living in another state but have relocated to a foreign country. The hearing justice noted the paucity of evidence before the court regarding the ability of the court in Ireland to hear and decide this case. She observed that "the only evidence the [Family] Court has of * * * proceedings in Ireland" is the Irish High Court decision. She calculated the amount of time that elapsed between the filing of the special summons by Hogan on July 30, 2014, and the decision issued by the Irish High Court on September 9. Based on this information, the hearing justice concluded that the proceedings in Ireland would be expeditious and consequently that the seventh factor was of equal weight.[10] The hearing justice made no note of the procedures necessary to present the evidence in Irish courts, nor was such evidence before the Family Court. In particular, neither party provided the court with a clear understanding about an issue of particular concern to McAndrew—whether the courts in Ireland would recognize an American joint-custody arrangement—nor could the parties do so on appeal to this Court. Moreover, there was no

---

[10] We note that, although the hearing justice had acknowledged elsewhere in her decision that the Limerick District Court would hear the substantive matter should the Rhode Island Family Court decline jurisdiction, she failed to consider whether the Limerick District Court would be equally as expeditious as the Irish High Court that had issued the judgment on the summons. There was no evidence before the court to support such a determination.

- 14 -

evidence before the Family Court—and the hearing justice did not inquire—whether the wishes of the children entangled in custody disputes are relevant or even considered by the Irish courts.[11] The dearth of information before the Family Court prompts us to conclude that the hearing justice improperly determined that the seventh factor weighed equally in favor of Ireland and Rhode Island. See Independent Oil and Chemical Workers of Quincy, Inc., 864 F.2d at 929.

We pause to stress that our concern over the inadequacy of evidence before the Family Court on this point bears no reflection upon our confidence in the ability of the judicial system in the Republic of Ireland to resolve custody disputes impartially or expeditiously. Much like the "best interests of the child" standard employed by the Family Court, see, e.g., Chiappone v. Chiappone, 984 A.2d 32, 38 (R.I. 2009), Ireland has a long-established tradition of recognizing the welfare of the children as "the first and paramount consideration" in the determination of custody disputes.[12] Our research instructs us that joint custody such as that currently held by McAndrew and Hogan is available by statute and granted regularly in Ireland.[13] Irish statutory authority provides that a father maintains guardianship of his minor children following divorce

---

[11] At oral argument before this Court, the parties disclosed that there may be legislation moving through the Irish Parliament that, if approved by the Irish High Court, would give voice to children in custody disputes. No citations to pending legislation were provided.

[12] Geoffrey Shannon, Child Custody Law of the Republic of Ireland, 39 Fam. L.Q. 353, 362 (2005) (quoting Guardianship of Infants Act 1964 § 3 (Act No. 7/1964) (Ir.), available at http://www.irishstatutebook.ie/eli/1964/act/7/enacted/en/print.html).

[13] See, e.g., Evelyn Mahon & Elena Moore, Post-Separation Parenting: A study of separation and divorce agreements made in the Family Law Circuit Courts of Ireland and their implications for parent-child contact and family lives, Office of the Minister for Children & Youth Affairs 7-8, 60 (2011), http://www.dcya.gov.ie/documents/publications/Post_Separation_Parenting.pdf; Shannon, 39 Fam. L.Q. at 365 (citing Guardianship of Infants Act 1964 § 11.)

from their mother[14] and may "apply to [an Irish] court for its direction on any question affecting [their] welfare," including custody of and access to the children.[15] Accordingly, our conclusion that the Family Court justice improperly relied on insufficient evidence before the court solely relates to the question of whether Ireland is a more appropriate forum to hear and decide this particular dispute and the dearth of findings on this question by the Family Court.

We now turn to the conclusion the hearing justice reached after discussing each of the eight factors. With the exception of the sixth factor—"[t]he nature and location of the evidence required to resolve the pending litigation," § 15-14.1-19(b)(6)—the hearing justice appears to have given equal weight to most of the factors and then based her conclusion on the forum with the greatest number of factors in its favor. She did not consider the interplay among the factors. She also found that the sixth factor—the location of the social service workers and the location of two (now one) of the children in Ireland—was of foremost importance in deciding that Ireland was the most appropriate forum. However, she did not set forth her reasons for doing so and overlooked McAndrew's contention that testimony from witnesses in Ireland could be obtained through teleconference or that written reports could be transmitted electronically.[16] In reaching the conclusion that Ireland constituted a more appropriate forum, the hearing justice overlooked

---

[14] Family Law (Divorce) Act 1996 § 10(2) (Act No. 33/1996) (Ir.), available at http://www.irishstatutebook.ie/eli/1996/act/33/enacted/en/print; see also Guardianship of Infants Act 1964 § 6(1) ("The father and mother of an infant shall be guardians of the infant jointly.").

[15] Guardianship of Infants Act 1964 § 11(1), (2)(a).

[16] We note that, although we benefit from hindsight not available to the hearing justice at the time she declined jurisdiction, the transatlantic nature of the evidence did not impede the ability of the court to conduct a hearing on McAndrew's emergency motion for custody and placement of C. in January 2015. As we discussed in a footnote above, the court heard the testimony of a key witness in Ireland through teleconference, and evidence that originated in Ireland was sent to the parties in Rhode Island to be introduced as exhibits.

- 16 -

and misconceived material evidence, and she gave improper weight to the seventh factor for which there was insufficient evidence and the record otherwise was silent. She also overlooked the fact that the agreement between the parties had ripened into a final judgment and served as a crucial condition for McAndrew's consent to his children relocating to Ireland, which merited at least some deference from the court.

## II. Convenience of Rhode Island as a Forum

As we elucidated above, the inquiry under § 15-14.1-19 of the UCCJEA requires a two-part analysis. The court first must determine that a more appropriate forum exists. Upon reaching such a conclusion, the court only may decline jurisdiction if it makes a separate finding that Rhode Island is an inconvenient forum to hear the matter. The record indicates that the hearing justice performed only the first step set forth in § 15-14.1-19. She merely determined that the weight of the statutory factors required the court to decline jurisdiction in favor of Ireland. Absent from the decision is an independent finding that Rhode Island was "significantly inconvenient and [that] the ends of justice would be better served if the action were brought and tried in another forum." Kedy, 946 A.2d at 1178. Even when reviewed as a whole, there is no determination that it would be inconvenient or unjust to proceed in Rhode Island, only that Rhode Island was not as convenient a forum as Ireland. A court may not decline jurisdiction under the UCCJEA merely because another forum of equal or greater convenience exists.

We therefore are of the opinion that the hearing justice abused her discretion in executing both steps of the necessary two-part analysis under § 15-14.1-19 of the UCCJEA and by subsequently declining jurisdiction on the ground of forum non conveniens.

- 17 -

For the reasons set forth above, we vacate the judgment of the Family Court. The case is remanded to the Family Court for hearing on the defendant's motion to modify custody and placement and for further proceedings in accordance with this decision. The papers shall be returned to the Family Court.

Justice Flaherty did not participate.

**Chief Justice Suttell, concurring in part and dissenting in part.** Although I concur with the majority's conclusion that the judgment of the Family Court should be vacated, I depart somewhat from its reasoning. Perhaps my quarrel with the majority opinion is more form than substance. Nevertheless, I believe that the hearing justice appropriately considered the statutory factors set forth in G.L. 1956 § 15-14.1-19(b) and that she did not abuse her discretion in finding that Ireland was the more appropriate forum. I agree with the majority, however, that the hearing justice did not perform the second step of the two-part analysis required by the Uniform Child Custody Jurisdiction and Enforcement Act's (UCCJEA) forum non conveniens inquiry as set forth in § 15-14.1-19—she did not make an independent finding that Rhode Island is an inconvenient forum.

Section 15-14.1-19(a) provides that the Family Court "may decline to exercise its jurisdiction at any time if it determines that [1] it is an inconvenient forum under the circumstances and [2] that a court of another state [or foreign country in this instance] is a more appropriate forum." Under § 15-14.1-19(b), the court must first determine "whether it is appropriate for a court of another state [or foreign country] to exercise jurisdiction." The statute further enumerates eight non-exclusive factors that the court "shall consider." As the majority

opinion acknowledges, the hearing justice "properly referenced" all eight factors in reaching her conclusion that Ireland was the more appropriate jurisdiction. Although I might have weighed the various factors differently than the hearing justice did, her finding in this regard was, in my judgment, well within the ambit of her discretion.

To be sure, the hearing justice did not articulate the specific significance she ascribed to each factor. Nevertheless, I believe that the fair inferences that can be drawn from her decision indicate that she did appropriately weigh them in making her determination. She considered that all three children had lived in Ireland for five and a half years "especially during the children's growing years" from "young children to adolescence." In discussing the third factor—the distances between the courts—she noted that defendant testified that he typically travels to Ireland at least three times a year. She also compared the difficulty to each party that transatlantic travel for court hearings would necessitate. The plaintiff worked at a local hospital on a per-diem basis and was unable to get a job with vacation time; defendant received a biweekly stipend from his medical practice "whether he works or not" as long as the funds were available. In addition, the hearing justice found that "the child care problems weigh more heavily on the [p]laintiff than they do on the [d]efendant if travel is required for court hearings," noting that plaintiff testified that she had difficulty finding someone to care for the two children who were then living with her in Ireland, whereas defendant "lives with his significant other who presumably * * * would be available to stay with [P.] if the defendant had to travel to Ireland."

As for the parties' financial circumstances, the hearing justice found that defendant was in a better situation than plaintiff. Specifically, she stated that defendant was a partner in a medical practice receiving a biweekly stipend of $5,500 when funds were available and that he had not received the stipend four to five times in 2014. He also had a 401(k) plan with an

approximate balance of $400,000 and another investment account with approximately $25,000. The hearing justice noted that defendant testified he would pay the travel expenses of all witnesses who might have to travel to Rhode Island. The plaintiff worked as a registered nurse on a per-diem basis, earning approximately $340 per week. The hearing justice further found that plaintiff had no ability to pay her own travel and hotel expenses, stating that plaintiff had had to borrow funds from her brother to retain a barrister and solicitor in Ireland.

The majority takes particular issue with the hearing justice's treatment of the fifth factor—any agreement of the parties—holding that she overlooked defendant's testimony that the forum selection clause was the sine qua non of his willingness to execute the property settlement agreement and to allow the children to move to Ireland with plaintiff. Clearly, an agreement by the parties in a child custody dispute as to which court should exercise jurisdiction is a significant factor; it is not dispositive, however. The hearing justice stated, correctly I believe, that "just because it's in a property settlement agreement doesn't make it absolutely binding. The [c]ourt must consider all of the factors in the statute, particularly in matters relating to children where the court always has final decision-making authority." I fail to see, however, why a party's motivation for entering into the agreement should give it enhanced significance. No matter what the inducement, it is a binding contract—indeed in this case it had ripened into a final judgment—and, as such, it is entitled to due consideration. Under the UCCJEA forum non conveniens calculus, however, it is but one of the factors that must be considered.

It is the sixth factor—location of the evidence—on which the hearing justice placed the greatest emphasis. In so doing, she considered the location of the evidence relative to the factors set forth in Pettinato v. Pettinato, 582 A.2d 909, 913-14 (R.I. 1990) that would come into play in a change-of-placement hearing. She considered the fact that at that time two of the children

- 20 -

resided with their mother in Ireland and that one of defendant's primary allegations supporting a change of placement was the children's deteriorating relationship with their mother. Accordingly, she reasoned, "[v]irtually everybody involved with this family who could testify to the [p]laintiff's relationship with the children, which is one of the mainstays of the [d]efendant's motion, they're all in Ireland." So too, she found, was all of the evidence concerning the children's adjustment to their Irish home, school, and community. The hearing justice further indicated that plaintiff's mental health would be a major issue and that all of the evidence pertaining thereto would necessarily be in Ireland, including two therapists to whom either she or the children had been referred by "Tusla," the Irish Child and Family Agency. The hearing justice also considered that all evidence relating to the stability of the children's home environment would be located in Ireland.

The hearing justice next addressed the ability of each court "to decide the issue expeditiously and the procedures necessary to present the evidence." Based upon the little evidence presented to the court, she found this factor to be neutral. The majority concludes that the lack of information about Irish courts should weigh in favor of Rhode Island exercising jurisdiction. I agree. The only information before the court regarding the judicial process in Ireland concerned the proceedings before the High Court of Ireland. The hearing justice noted the time that had elapsed between the filing of a special summons on July 30, 2014, and the rendering of a "judgment" on September 9, 2014, remarking "[t]hat's pretty quick action. It certainly was expeditious." The appropriate forum for the custody proceedings in Ireland, however, would presumably be the Limerick District Court, not the High Court of Ireland. Further, there was no evidence whatsoever concerning the procedures necessary to present the evidence in the Irish courts.

I think it incumbent on a party seeking to remove a case under the UCCJEA from Rhode Island to another jurisdiction to produce evidence bearing on the evidentiary procedures and potential for an expeditious resolution in that jurisdiction. This is particularly true when the other jurisdiction is a foreign country where court practices and procedures may be quite different from those in Rhode Island. In the case under review, neither party requested that the Family Court decline to exercise its jurisdiction; rather the issue was raised by the hearing justice sua sponte. Nevertheless, it was clearly in plaintiff's interest that the custody determination be made by the Irish courts. She had an opportunity to present evidence relative to this factor, yet did not do so.

Consequently, I agree with the majority that the hearing justice improperly weighed this factor by treating it as neutral. In my opinion, however, her error is not of such a magnitude as to constitute an abuse of discretion in her ultimate conclusion that Ireland was the more appropriate forum. As the majority acknowledges, the lack of evidence in this regard does not undermine our confidence in the ability of the Irish courts to resolve custody disputes "impartially or expeditiously." It is a factor, however, that should have tilted in favor of Rhode Island retaining jurisdiction.

Finally, the hearing justice found that the eighth statutory factor—the familiarity of each court with the facts and issues in the pending litigation—weighed "somewhat" in favor of Rhode Island exercising jurisdiction. She then concluded that:

> "in reviewing all of these factors and in considering all of them, the [c]ourt must conclude that the weight of the factors, the statutory factors, compels, and particularly where the evidence is located for those motions which are substantive, that the [c]ourt must decline to exercise jurisdiction in this matter, and that the more appropriate forum for this matter to be heard would be Ireland."

I cannot say that the hearing justice abused her discretion in reaching this conclusion. She considered all the statutory factors. Although she may not have articulated extensively the relative weight she ascribed to each particular factor, a hearing justice's findings and analysis of the evidence need not be exhaustive. See, e.g., South County Post & Beam, Inc. v. McMahon, 116 A.3d 204, 210 (R.I. 2015); Lembo v. Lembo, 677 A.2d 414, 417 (R.I. 1996). The hearing justice did indicate that she considered the location of the evidence to be of particular significance. I also believe that a fair inference from her decision is that she placed a great deal of import on the relative financial circumstances of the two parties. I might have placed greater weight on the parties' agreement than did the hearing justice, but the issue is not whether I would have reached a different result than she did; the issue is whether she abused her discretion in so doing. See South County Post & Beam, Inc., 116 A.3d at 210 (stating that "we shall not substitute our view of the evidence for [that of the hearing justice] even though a contrary conclusion could have been reached" (quoting JPL Livery Services, Inc. v. Rhode Island Department of Administration, 88 A.3d 1134, 1142 (R.I. 2014))). In my judgment, she did not.

The inconvenient-forum analysis under § 15-14.1-19, however, is a two-step process. Having concluded that Ireland was the more appropriate forum, the hearing justice was required to determine that Rhode Island was an inconvenient forum. This inquiry, I suggest, entails the weighing of private- and public-interest factors such as we discussed in Kedy v. A.W. Chesterton Co., 946 A.2d 1171, 1184-85 (R.I. 2008). Undoubtedly there will be an overlap of many of the factors already considered in the determination of which forum is more appropriate; nonetheless, under the statute it is a distinct analysis. I would also maintain that the fact that the parties' forum selection clause had been incorporated into the final judgment should be an important consideration at this stage of the analysis. A final judgment mandating that the Rhode Island

Family Court "shall" retain jurisdiction ought to create a heavy burden to overcome in any determination that said court is an inconvenient forum.

I concur with the majority, therefore, that the judgment of the Family Court should be vacated because the hearing justice, having concluded that Ireland was the more appropriate forum, failed to properly consider whether Rhode Island was an inconvenient forum. I disagree, however, with the majority's holding that a Family Court justice must make an independent finding that Rhode Island is "significantly inconvenient" (quoting Kedy, 946 A.2d at 1178). By so doing, the majority attempts to engraft a common-law concept onto a statutory procedure. In Kedy, 946 A.2d at 1175, we recognized the viability of the doctrine of forum non conveniens in Rhode Island's common-law jurisprudence. In the context of child custody disputes under the UCCJEA, the doctrine is purely a creature of statute. Section 15-14.1-19(a) provides that the court "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum * * *." The statute does not require a finding that it is "significantly" inconvenient, nor should this Court.

Accordingly, I would vacate the judgment and remand the case to the Family Court with instructions that the court determine whether or not the Family Court is an inconvenient forum. As it has been represented to us that two of the parties' three children are now living in Rhode Island, I would direct the Family Court to reopen the evidence so as to consider the issues under § 15-14.1-19 in light of current circumstances.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Valerie M. (McAndrew) Hogan v. Philip A. McAndrew.

**CASE NO:**    No. 2014-255-Appeal.
(K06-136)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  February 12, 2016

**JUSTICES:**    Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Kent County Family Court

**JUDGE FROM LOWER COURT**:

    Associate Justice Sandra A. Lanni

**ATTORNEYS ON APPEAL:**

    For Plaintiff:   Barbara E. Grady, Esq.

    For Defendant:  Thomas M. Dickinson, Esq.
                    Kathleen M. Hagerty, Esq.